UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 3:10-cr-151-TBR

UNITED STATES OF AMERICA,                                                                PLAINTIFF

v.

RONTEZ P. COLBERT,                                                                         DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendant Rontez P. Colbert's Request for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1) ("Motion for Compassionate Release"), [DN 140]. The United States has responded in opposition, [DN 151]. In response, Defendant filed a "Supplemental Motion for Compassionate Release and Sentence Reduction," [DN 156]. The Court has reviewed the filing and construes it as a supplement to Defendant's initial motion. Accordingly, this matter is fully briefed and ripe for review. For the reasons set forth below, the Court will deny Defendant's Motion for Compassionate Release, [DN 140].

**I.   BACKGROUND**

On October 26, 2010, Defendant was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [DN 1; DN 12]. The Indictment further alleged that Defendant violated the Armed Career Criminal Act, 18 U.S.C. § 924(e). [DN 12]. On September 27, 2011, the matter proceeded to trial, and a jury returned a guilty verdict. [DN 72]. Defendant was thereafter sentenced to 235 months (or approximately 19.5 years) in prison. [DN 87]. He now seeks compassionate release under 18 U.S.C. § 3582(c)(1), relying primarily on his medical

1

conditions and the ongoing COVID-19 pandemic. [DN 140]. In his supplemental brief, he also cites to his efforts at rehabilitation. [DN 156]. Lastly, he urges the Court to reduce his sentence under the First Step Act. *Id.*

## II.  ANALYSIS

### A.  Legal Standard

The compassionate release statute allows the Court to reduce the term of imprisonment and impose a term of probation or supervised release under certain narrow circumstances. Section 3852(c) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that-
> (1) In any case—
> (A) *the court*, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier *may reduce the term of imprisonment* (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—*
> > *(i) extraordinary and compelling reasons warrant such a reduction . . . .*

18 U.S.C.A. § 3582(c)(1)(A) (emphasis added).

"The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (citing *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days

after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

Upon satisfying the exhaustion requirement (or upon waiver by the government of this requirement), 18 U.S.C. § 3582(c)(1)(A) requires the Court to engage in a "three-step inquiry" in reviewing compassionate release motions. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion ... to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111. Thus, for now, district courts need not ensure that their ideas of extraordinary and

3

compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

After considering whether extraordinary and compelling reasons warrant a sentence reduction, the district court proceeds to the final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court is to consider whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A); *Elias*, 984 F.3d at 518 (citing *Jones*, 980 F.3d at 1101, 1108). Additionally, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519.

### B. Exhaustion of Administrative Remedies

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, 425 F.Supp.3d. 573, No. 1:13-CR-186-6, 2019 WL 2716505, at *4 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *United States v. Marshall*, No. 3:19-CR-00004-JHM, 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

Defendant asserts that he filed a request for compassionate release with the warden of the institution where he resides, but said request was denied. [DN 140, p. 4]. He does not provide a copy of his initial request, but he does provide a copy of the warden's denial letter. [DN 140-1].

The Court finds that Defendant exhausted his administrative remedies. The warden's denial letter indicates that Defendant did, in fact, file a compassionate release request with the prison, and it was denied. [DN 140-1]. *See Marshall*, 2020 WL 114437, at *1.

### C.  Extraordinary and Compelling Reasons

The Court next considers whether there are "extraordinary and compelling reasons" that justify a reduction of his sentence. "[D]istrict courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519–20. But "the mere fact that defining *extraordinary and compelling* 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Those words still have their ordinary meaning. *Id.* When Congress enacted the statute in 1984, "'extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *Id.* (citing Webster's Third New International Dictionary: Unabridged 807 (1971)). And "'[c]ompelling' meant 'forcing, impelling, driving.'" *Id.* (citing Webster's Third New International Dictionary at 463).

In support of his request for compassionate release, Defendant argues that he should be granted compassionate release due to (1) his medical conditions (diabetes) and the ongoing COVID-19 pandemic; (2) the sentencing disparities at play under the First Step Act; and (3) his rehabilitative efforts. The Court addresses each argument in turn.

#### 1.  Medical Conditions and COVID-19

In his motion, Defendant states that he suffers from diabetes, and that "medication associated with this ailment has compromised Mr. Colbert's immune system should he contract COVID-19." [DN 140, pp. 1–2]. He also cites to "multiple COVID-19 outbreaks" at his prison

5

and argues that the prison has failed to adequately respond to and contain the virus. *Id.* at 6. He argues that this "places Mr. Colbert at high risk for infection, intensive treatment, and/or possible death if he contracts COVID-19." *Id.* In response, the United States notes that, according to the information available to it at the time of its filing, Defendant has received his first dose of the COVID-19 vaccine. [DN 151, p. 11]. In his supplemental filing, Defendant states that he has received both doses and is therefore fully vaccinated. [DN 156, p. 3].

In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the Sixth Circuit cited with approval a two-factor test for determining "when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release." *Id.* at 520 (citation omitted). Under that test, the fear of contracting COVID-19 qualifies as an extraordinary and compelling reason for release "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Id.* (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, *4 (N.D. Ohio May 22, 2020)) (internal quotation marks omitted).

In the present case, Defendant alleges that he suffers from diabetes, and the United States has provided Defendant's medical records confirming that diagnosis. *See* [DN 151, p. 10]. The United States acknowledges that the Center for Disease Control and Prevention ("CDC") has identified diabetes as a condition that puts an individual at greater risk of severe illness if he or she contracts COVID-19. *Id.* Accordingly, the first *Elias* factor—whether Defendant is at a high risk of having complications from the virus—weighs in Defendant's favor.

However, the Court will also consider whether the prison where Defendant is held has a severe COVID-19 outbreak. *See Elias*, 984 F.3d at 521. Defendant is housed at Federal Correctional Institute ("FCI") Gilmer. As of the date of the entry of this Order, December 6,

6

2021, there are currently zero inmates and zero staff members infected with COVID-19 at FCI Gilmer.[1] Further, the facility is operating at a "Level 3," meaning it has employed "intense modifications" to prevent the spread of the virus, including facility-wide use of face coverings by both staff and inmates, social distancing in all areas, and daily symptom/temperature screenings for staff.[2] Lastly, the Court notes that Defendant is fully vaccinated at this time, and by Defendant's own admission, this decreases his chances of contracting COVID-19. *See* [DN 156, p. 3]. Under these circumstances, the second *Elias* factor weighs heavily against Defendant. The Court therefore cannot find that Defendant's medical condition and the ongoing pandemic qualify as extraordinary and compelling reasons for his compassionate release. *See Elias*, 984 F.3d at 521.

### 2. First Step Act

In his supplemental brief, Defendant also argues that changes in the law under the First Step Act warrant a sentence reduction and immediate release. [DN 156, p. 5–8]. He notes that, under the First Step Act, his prior convictions no longer trigger a sentencing enhancement under 21 U.S.C. § 802(57). *Id.* at 6. Stated another way, Defendant argues that his prior convictions would no longer qualify as "serious drug felonies," thereby creating a sentencing disparity between the sentence he actually received in 2011 and the sentence he would receive if sentenced today.

In a series of recent cases, the Sixth Circuit has grappled with the idea of using sentencing disparities created by statutory changes as an "extraordinary and compelling" reason

---

[1] *See* Covid-19 Cases, https://www.bop.gov/coronavirus/ (last visited Dec. 6, 2021).
[2] *See* Modified Operational Levels, https://www.bop.gov/coronavirus/ (last visited Dec. 6, 2021); BOP Covid-19 Operational Levels,
https://www.cr.bop.gov/coronavirus/https://wcww.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Dec. 6, 2021).

for a sentence reduction under § 3582(c)(1)(A). *See United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021); *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021); *United States v. Wills*, 991 F.3d 720 (6th Cir. 2021); *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021); *United States v. Hunter*, No. 21-1275, 2021 WL 3855665 (6th Cir. Aug. 30, 2021). In the most recent decision by the Sixth Circuit on the matter, the Court held that "non-retroactive statutory reforms in the First Step Act of 2018—as a matter of law—cannot be used to find 'extraordinary and compelling reasons' for a sentence reduction under § 3582(c)(1)(A)(i)." *Hunter*, No. 21-1275, 2021 WL 3855665, at *5 (citing *Jarvis*, 999 F.3d at 445-46; *Wills*, 991 F.3d at 723-24; *Tomes*, 990 F.3d at 505).

Section 403 of the First Step Act "expressly prohibits" retroactivity by limiting applicability to sentences that had not yet been imposed at the time of enactment. [DN 557 at 3]; *see also*, Pub. L. No. 115-391, 132 Stat. 5194. As is the "ordinary practice" in federal sentencing "to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Wills*, 991 F.3d at 723-24 (quoting *Dorsey v. United States*, 567 U.S. 260, 280, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012)). The Sixth Circuit determined that what is considered an "ordinary practice" by the Supreme Court "cannot also be an 'extraordinary and compelling reason' to deviate from that practice." *Hunter*, No. 21-1275, 2021 WL 3855665, at *5 (citing *Wills*, 991 F.3d at 724). "Since sentencing disparities are a natural result of the First Step Act, they are not an extraordinary and compelling reason for a sentence reduction." *Owens*, 996 F.3d at 765 (Thapar, J., dissenting). This means that courts cannot "treat the First Step Act's non-retroactive amendments, whether by themselves or together with other factors, as 'extraordinary and compelling' explanations for a sentencing reduction." *Jarvis*, 999 F.3d at 445.

As the Sixth Circuit has made clear, § 3582(c)(1)(A) is not "an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." *Tomes*, 990 F.3d at 505.

Considering this legal landscape, the Court concludes that the weight of Sixth Circuit authority supports the *Hunter* decision, and as such, the Court will follow that approach. As a result, Defendant's sentencing disparity cannot be considered—either by itself or together with other factors—as an extraordinary and compelling reason for compassionate release.

### 3. Rehabilitation

Defendant also urges the Court to consider his rehabilitative efforts. He notes that he completed his GED in 2012 and has since completed "a host of [Bureau of Prisons] courses." [DN 156, p. 4]; *see also* [DN 155-1, p. 3]. Several of the courses appear to be related to physical fitness (e.g., jump rope; cardio; and abdominals), and Defendant states that he "tries to avoid conflicts by staying active over the years." [DN 156, p. 5]. He states that he leads a house fitness class for seven fellow inmates. *Id.* Other courses taken by Defendant are related to HVAC repair, creating writing, and business education. [DN 155-1, p. 3]. Defendant contends that he will likely pursue a career in HVAC repair upon his release, and he has instructed other inmates on "the general skills involving the HVAC trade." [DN 156, p. 4]. The Court commends Defendant for obtaining his GED and for pursuing his fitness goals and his HVAC training and career goals.

However, "rehabilitation is specifically excluded as an independent basis for compassionate release." *United States v. Wieber*, 2020 WL 1492907 *3 (W.D. Ky. March 27, 2020). In other words, there must be some other basis for finding that extraordinary and compelling reasons exist before the Court can consider Defendant's rehabilitation as a factor. Here, Defendant is unable to show an extraordinary and compelling reason for release, as explained above, and his motion must therefore be denied.

9

In sum, considering the totality of Defendant's circumstances, the Court finds that Defendant has failed to demonstrate extraordinary and compelling reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

### D.  18 U.S.C. § 3553(a) Factors

Even though the Court has found Defendant is not entitled to compassionate release because he has failed to demonstrate extraordinary and compelling circumstances, the Court will nevertheless weigh the sentencing factors in § 3553(a). *See United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D.N.M. 2019). Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> 
> (2) the need for the sentence imposed—
> 
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> 
>> (B) to afford adequate deterrence to criminal conduct;
>> 
>> (C) to protect the public from further crimes of the defendant; and
>> 
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> 
> (3) the kinds of sentences available;
> 
> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
> 
> (5) any pertinent policy statement . . . by the Sentencing Commission;
> 
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> 
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court finds that compassionate release is not appropriate in this case. In the present case, the nature and circumstances of the crime are serious and weigh against compassionate release. Defendant was observed by police engaging in multiple apparent drug transactions in and around Victory Park, an area of Louisville, Kentucky that the United States describes as being "plagued by violent crime, drugs and gang activity." [DN 151, p. 12]; *see also* [DN 90, p. 5 (describing Victory Park as "an area known as an open-air drug market")]. The police thereafter conducted a traffic stop of Defendant's vehicle, and a subsequent search of that vehicle revealed a handgun, which Defendant admitted to owning. [DN 90, p. 5]. A search of Defendant's home also revealed four additional firearms (two of which were stolen), ammunition, drugs, and drug paraphernalia. *Id.* The seriousness of the underlying crime—possession of a firearm by a convicted felon—must be viewed in light of these circumstances, which indicate that the firearm was possessed during various drug transactions.

The Court also considers Defendant's history, which is replete with drug-related convictions and violent crimes. His criminal history dates back to 1995, when Defendant was only eighteen years old and was convicted on two counts of possession of cocaine. *Id.* at 8. In the following years, Defendant was convicted of multiple felonies (including multiple drug-related convictions, including possession of cocaine and trafficking in cocaine, and multiple assault convictions, including one in which Defendant repeatedly stabbed the victim and another in which he attacked a corrections officer) as well as several concerning misdemeanors (such as criminal mischief, resisting arrest, and a domestic violence assault charge in which he broke the windows of the victim's car with a brick and attempted to pull the victim through the broken window). *Id.* at 8–12. These convictions occurred up until March 2010, only months prior to

Defendant's arrest in the current case. *Id.* at 12. The Court cannot ignore the serious and violent nature of Defendant's past convictions, nor can the Court ignore the fact that this criminal behavior continued from 1995 until the time of his arrest in 2010. The Court also notes that Defendant served several years of imprisonment for his past crimes, but each time he was released, he continued to commit violent crimes and drug-related crimes. During his current period of incarceration, he has received at least four disciplinary infractions. [DN 149-1].

Further, Defendant was sentenced to 235 months, or approximately 19.5 years, for the present conviction, and has been incarcerated since October 2010. He therefore has approximately eight years remaining on his sentence. The Court finds that releasing Defendant at this time, with roughly eight years remaining on this sentence, would minimize the seriousness of his crimes, fail to afford adequate deterrence to criminal conduct, and would be unjust in light of the serious nature of his crime.

Accordingly, the Court finds that the nature and circumstances of the present offense and Defendant's history and characteristics do not support relief. Therefore, even if the Court found that extraordinary and compelling reasons for release existed, the Court must deny Defendant's motion under 18 U.S.C. § 3553(a).

### III. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendant Rontez P. Colbert's Request for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1), [**DN 140**], is **DENIED**.

*Thomas B. Russell*

Thomas B. Russell, Senior Judge
United States District Court

December 6, 2021

cc: Counsel of Record
    Defendant, pro se

12