**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CRIMINAL ACTION NO. 3:10-cr-151-TBR**

**UNITED STATES OF AMERICA,**                                    **PLAINTIFF**

**v.**

**RONTEZ P. COLBERT,**                                            **DEFENDANT**

### MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendant Rontez P. Colbert's "Emergency Motion for Compassionate Release/Sentence Reduction" ("Motion for Compassionate Release"), [DN 158], and "Motion Seeking Modification of His Supervised Release Sentence" ("Motion for Home Incarceration"), [DN 162]. The United States has responded in opposition, [DN 161], and Defendant has replied, [DN 163]. These matters are therefore fully briefed and ripe for review. For the reasons set forth below, the Court will deny Defendant's Motion for Compassionate Release, [DN 158], and Motion for Home Incarceration, [DN 162].

**I.    BACKGROUND**

On October 26, 2010, Defendant was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [DN 1; DN 12]. The Indictment further alleged that Defendant violated the Armed Career Criminal Act, 18 U.S.C. § 924(e). [DN 12]. On September 27, 2011, the matter proceeded to trial, and a jury returned a guilty verdict. [DN 72]. Defendant was thereafter sentenced to 235 months (or approximately 19.5 years) in prison. [DN 87].

1

On February 12, 2021, Defendant filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1), relying primarily on his medical conditions and the ongoing COVID-19 pandemic. [DN 140]. He also cited to his efforts at rehabilitation and urged the Court to reduce his sentence under the First Step Act. [DN 156]. On December 7, 2021, the Court entered a Memorandum Opinion and Order denying Defendant's motion. [DN 157]. In that opinion, the Court first found that Defendant had exhausted his administrative remedies. *Id.* The Court next considered whether he had demonstrated extraordinary and compelling reasons for release but found that his medical condition and the threat of contracting COVID-19 did not qualify as an extraordinary and compelling reason in Defendant's case. *Id.* The Court further found that, under the most recent Sixth Circuit precedent at that time, it could not consider the First Step Act sentencing disparity issue as an extraordinary and compelling reason for release. *Id.* The Court also considered Defendant's rehabilitative efforts but concluded that rehabilitation alone could not qualify as an extraordinary and compelling reason. *Id.* Lastly, the Court found that, even if extraordinary and compelling reasons existed, it would still deny compassionate release after consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.*

Just a few weeks later, Defendant filed the present motion, again seeking compassionate release under 18 U.S.C. § 3582(c)(1). [DN 158]. Defendant again relies on his medical conditions and the ongoing COVID-19 pandemic, his efforts at rehabilitation, and the First Step Act. *Id.* With respect to each of these issues, he argues that the Court's prior ruling was incorrect and should be reconsidered. As a result, the United States has argued that the motion is an untimely motion to reconsider. [DN 161]. While the Court agrees, the Court also understands that Defendant attempted to file a timely motion to reconsider, but it was apparently lost in the prison mail system and never made it to this Court. [DN 158]. The Court will therefore consider

the present motion as a second motion for compassionate release, thereby allowing Defendant to present his arguments to the Court.

Before the United States responded to Defendant's second motion seeking compassionate release, Defendant filed his Motion for Home Incarceration, [DN 162]. In that motion, Defendant "moves this Court to modify the life of his sentence to home confinement being that his pending [Motion for Compassionate Release] is supported by the recent ruling in *United States v. McCall*, [20 F.4th 1108 (6th Cir. 2021)]." [DN 162]. He argues that, if the Court grants his Motion for Compassionate Release and reduces his sentence to time served, it should also modify his five-year period of supervised released and impose home incarceration as a condition of his release. *Id.*

The Court addresses both of Defendant's motions below.

## II.  ANALYSIS

### A.  Legal Standard

The compassionate release statute allows the Court to reduce the term of imprisonment and impose a term of probation or supervised release under certain narrow circumstances. Section 3852(c) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that-
> (1) In any case—
> (A) *the court*, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier *may reduce the term of imprisonment* (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—*

3

> *(i) extraordinary and compelling reasons warrant such a reduction . . . .*

18 U.S.C.A. § 3582(c)(1)(A) (emphasis added).

"The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (citing *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

Upon satisfying the exhaustion requirement (or upon waiver by the government of this requirement), 18 U.S.C. § 3582(c)(1)(A) requires the Court to engage in a "three-step inquiry" in reviewing compassionate release motions. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion ... to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111. Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

After considering whether extraordinary and compelling reasons warrant a sentence reduction, the district court proceeds to the final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court is to consider whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A); *Elias*, 984 F.3d at 518 (citing *Jones*, 980 F.3d at 1101, 1108). Additionally, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519.

### B. Exhaustion of Administrative Remedies

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, 425 F.Supp.3d. 573, No. 1:13-CR-186-6, 2019 WL

5

2716505, at *4 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *United States v. Marshall*, No. 3:19-CR-00004-JHM, 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

Neither party addresses this issue. However, with respect to his first motion seeking compassionate release, the Court found that Defendant exhausted his administrative remedies. Because this second motion seeking compassionate release addresses the same issues presented in that initial motion, the Court finds that Defendant exhausted his administrative remedies.

### C. Extraordinary and Compelling Reasons

The Court next considers whether there are "extraordinary and compelling reasons" that justify a reduction of his sentence. "[D]istrict courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519–20. But "the mere fact that defining *extraordinary and compelling* 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Those words still have their ordinary meaning. *Id.* When Congress enacted the statute in 1984, "'extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *Id.* (citing Webster's Third New International Dictionary: Unabridged 807 (1971)). And "'[c]ompelling' meant 'forcing, impelling, driving.'" *Id.* (citing Webster's Third New International Dictionary at 463).

In support of this second request for compassionate release, Defendant argues that he should be granted compassionate release due to (1) his medical conditions (diabetes) and the

6

ongoing COVID-19 pandemic; (2) the sentencing disparities at play under the First Step Act; and (3) his rehabilitative efforts. The Court addresses each argument in turn.

### 1. Medical Conditions and COVID-19

Defendant suffers from diabetes. He cites to multiple COVID-19 outbreaks at his prison facility, and argues that these outbreaks, combined with his medical condition, constitute an extraordinary and compelling reason for release. The Court previously found that the Defendant's medical condition and the state of the ongoing pandemic did *not* qualify as an extraordinary and compelling reason for release under *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021). In *Elias*, the Sixth Circuit cited with approval a two-factor test for determining "when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release." *Id.* at 520 (citation omitted). Under that test, the fear of contracting COVID-19 qualifies as an extraordinary and compelling reason for release "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Id.* (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, *4 (N.D. Ohio May 22, 2020)) (internal quotation marks omitted). In the Court's prior order, it found that Defendant's facility did not have an ongoing severe COVID-19 outbreak, and as a result, the second *Elias* factor was not satisfied. [DN 157].

The Court again considers the *Elias* factors in light of Defendant's most recent motion for compassionate release. As the Court has already acknowledged, Defendant suffers from diabetes, and the United States previously provided Defendant's medical records confirming that diagnosis. *See* [DN 151, p. 10]. The Center for Disease Control and Prevention ("CDC") has identified diabetes as a condition that puts an individual at greater risk of severe illness if he or

she contracts COVID-19. Accordingly, the first *Elias* factor—whether Defendant is at a high risk of having complications from the virus—weighs in Defendant's favor.

However, the Court must also consider whether the prison where Defendant is held has a severe COVID-19 outbreak. *See Elias*, 984 F.3d at 521. Defendant is housed at Federal Correctional Institute ("FCI") Gilmer. In his present motion, he cites to an August 2021 COVID-19 outbreak at the facility, as well as a December 2021/January 2022 outbreak. [DN 158]. Citing to these outbreaks, he urges the Court to find that the second *Elias* factor has been satisfied. *Id.* He also complains that there are outbreaks when he files his motions, but those outbreaks are over by the time the Court rules on his motions. *Id.* Further, in his reply brief, he notes that at least two inmates testified positive in April 2022, resulting in a two-day lockdown. [DN 163].

The Court is sympathetic to the fact that Defendant's facility has suffered prior outbreaks. However, at the present time, there are currently zero inmates and only four staff members infected with COVID-19 at FCI Gilmer.[1] The Court cannot characterize this as a "severe" outbreak as required by *Elias*. Further, the facility is operating at a "Level 3," meaning it has employed "intense modifications" to prevent the spread of the virus, including facility-wide use of face coverings by both staff and inmates, social distancing in all areas, and daily symptom/temperature screenings for staff.[2] It appears that these efforts have been effective, as the April 2022 "outbreak" cited by Defendant resulted in only a two-day lockdown and only two positive test results. *See* [DN 163]. Lastly, the Court notes that Defendant is fully vaccinated at this time, and the United States claims (and Defendant does not deny) that Defendant also

---

[1] *See* Covid-19 Cases, https://www.bop.gov/coronavirus/ (last visited June 14, 2022).
[2] *See* Modified Operational Levels, https://www.bop.gov/coronavirus/ (last visited June 14, 2022); BOP Covid-19 Operational Levels,
https://www.bop.gov/coronavirus/https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited June 14, 2022).

8

received a booster shot of the vaccine. As the Sixth Circuit has explained, "a defendant's incarceration during the Covid-19 pandemic—when the defendant has access to the Covid-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction" because "for people living in close quarters, vaccines offer relief far more effective than a judicial order." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citation omitted).

Under these circumstances, the second *Elias* factor weighs heavily against Defendant. The Court therefore cannot find that Defendant's medical condition and the ongoing pandemic qualify as extraordinary and compelling reasons for his compassionate release. *See Elias*, 984 F.3d at 521.

### 2. First Step Act

Defendant again argues that changes in the law under the First Step Act warrant a sentence reduction and immediate release. [DN 158]. He notes that, under the First Step Act, his prior convictions no longer trigger a sentencing enhancement under 21 U.S.C. § 802(57). *Id.* In other words, he argues that his prior convictions would no longer qualify as "serious drug felonies," thereby creating a sentencing disparity between the sentence he actually received in 2011 and the sentence he would receive if sentenced today.

As the Court previously explained, the Sixth Circuit has grappled with the idea of using sentencing disparities created by statutory changes as an "extraordinary and compelling" reason for a sentence reduction under § 3582(c)(1)(A). *See United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021); *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021); *United States v. Wills*, 991 F.3d 720 (6th Cir. 2021); *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021); *United States v. Hunter*, No. 21-1275, 2021 WL 3855665 (6th Cir. Aug. 30, 2021). At the time that the Court

ruled on Defendant's first motion seeking compassionate release, the Sixth Circuit's most recent ruling on that issue was set forth in *United States v. Hunter*, No. 21-1275, 2021 WL 3855665 (6th Cir. Aug. 30, 2021). In that case, the Court held that "non-retroactive statutory reforms in the First Step Act of 2018—as a matter of law—cannot be used to find 'extraordinary and compelling reasons' for a sentence reduction under § 3582(c)(1)(A)(i)." *Hunter*, No. 21-1275, 2021 WL 3855665, at *5 (citing *Jarvis*, 999 F.3d at 445-46; *Wills*, 991 F.3d at 723-24; *Tomes*, 990 F.3d at 505).

After the Court ruled on Defendant's first compassionate release motion, the Sixth Circuit issued another opinion on this issue. In that case, *United States v. McCall*, 20 F.4th 1108 (6th Cir. 2021), the Sixth Circuit held that "a court may consider a nonretroactive change in the law as one of several factors forming extraordinary and compelling circumstances qualifying for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)." *Id.* at 1116. Defendant relies heavily on the *McCall* opinion in his present motions, urging the Court to consider the First Step Act sentencing disparity as an "extraordinary and compelling reason" for his release. *See* [DN 162]. However, on April 1, 2022, the Sixth Circuit granted a rehearing en banc of the *McCall* decision. *See United States v. McCall*, 29 F.4th 816 (6th Cir. 2022). As a result, the Court's previous decision in *McCall* was vacated. *Id.* The case was reargued en banc on June 8, 2022, but the Sixth Circuit has not yet rendered a decision. The Court cannot, therefore, rely on the previous *McCall* decision, now vacated, to grant compassionate release to Defendant.

Instead, the Court must turn to the series of cases outlined above and discussed in depth in this Court's prior order, [DN 157]. Considering this legal landscape, the Court concludes that the weight of Sixth Circuit authority supports the *Hunter* decision, and as such, the Court will follow that approach. As a result, Defendant's sentencing disparity cannot be considered—either

by itself or together with other factors—as an extraordinary and compelling reason for compassionate release.

### 3. Rehabilitation

Defendant also urges the Court to consider his rehabilitative efforts, which are detailed in the Court's prior order, [DN 157]. As the Court explained in that order, "rehabilitation is specifically excluded as an independent basis for compassionate release." *United States v. Wieber*, 2020 WL 1492907 *3 (W.D. Ky. March 27, 2020). In other words, there must be some other basis for finding that extraordinary and compelling reasons exist before the Court can consider Defendant's rehabilitation as a factor. Defendant argues that, for the reasons outlined in his motions, [DN 158; DN 162], the Court should consider his health conditions and the COVID-19 pandemic as an extraordinary and compelling reason, and it should also consider the First Step Act and its resulting sentencing disparity as an extraordinary and compelling reason. If the Court considers either of these to be extraordinary and compelling reasons, Defendant argues, it can then consider his rehabilitative efforts. However, as explained above, the Court finds that Defendant has failed to identify an extraordinary and compelling reason for release, and his motion must therefore be denied.

In sum, considering the totality of Defendant's circumstances, the Court finds that Defendant has failed to demonstrate extraordinary and compelling reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

### D. 18 U.S.C. § 3553(a) Factors

Even though the Court has found Defendant is not entitled to compassionate release because he has failed to demonstrate extraordinary and compelling circumstances, the Court will nevertheless weigh the sentencing factors in § 3553(a). *See United States v. Willis*, 382

11

F.Supp.3d 1185, 1188 (D.N.M. 2019). Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
> (5) any pertinent policy statement . . . by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court finds that compassionate release is not appropriate in this case, for the reasons previously stated in its order denying Defendant's first motion for compassionate release. [DN 157]. As the Court explained in that order, the nature and circumstances of the Defendant's crime are serious and weigh against compassionate release. Defendant was observed by police engaging in multiple apparent drug transactions in and around Victory Park, an area of Louisville, Kentucky that the United States describes as being "plagued by violent crime, drugs and gang activity." [DN 151, p. 12]; *see also* [DN 90, p. 5 (describing Victory Park as "an area known as an open-air drug

market")]. The police thereafter conducted a traffic stop of Defendant's vehicle, and a subsequent search of that vehicle revealed a handgun, which Defendant admitted to owning. [DN 90, p. 5]. A search of Defendant's home also revealed four additional firearms (two of which were stolen), ammunition, drugs, and drug paraphernalia. *Id.* The seriousness of the underlying crime—possession of a firearm by a convicted felon—must be viewed in light of these circumstances, which indicate that the firearm was possessed during various drug transactions.

The Court also considers Defendant's history, which is replete with drug-related convictions and violent crimes. His criminal history dates back to 1995, when Defendant was only eighteen years old and was convicted on two counts of possession of cocaine. *Id.* at 8. In the following years, Defendant was convicted of multiple felonies (including multiple drug-related convictions, including possession of cocaine and trafficking in cocaine, and multiple assault convictions, including one in which Defendant repeatedly stabbed the victim and another in which he attacked a corrections officer) as well as several concerning misdemeanors (such as criminal mischief, resisting arrest, and a domestic violence assault charge in which he broke the windows of the victim's car with a brick and attempted to pull the victim through the broken window). *Id.* at 8–12. These convictions occurred up until March 2010, only months prior to Defendant's arrest in the current case. *Id.* at 12. The Court cannot ignore the serious and violent nature of Defendant's past convictions, nor can the Court ignore the fact that this criminal behavior continued from 1995 until the time of his arrest in 2010. The Court also notes that Defendant served several years of imprisonment for his past crimes, but each time he was released, he continued to commit violent crimes and drug-related crimes. During his current period of incarceration, he has received at least four disciplinary infractions. [DN 149-1].

13

Further, Defendant was sentenced to 235 months, or approximately 19.5 years, for the present conviction, and has been incarcerated since October 2010. He therefore has approximately seven and a half years remaining on his sentence. The Court finds that releasing Defendant at this time, with roughly seven and a half years remaining on this sentence, would minimize the seriousness of his crimes, fail to afford adequate deterrence to criminal conduct, and would be unjust in light of the serious nature of his crime.

Accordingly, the Court finds that the nature and circumstances of the present offense and Defendant's history and characteristics do not support relief. Therefore, even if the Court found that extraordinary and compelling reasons for release existed, the Court must deny Defendant's motion under 18 U.S.C. § 3553(a).

### E. Motion for Home Incarceration, [DN 162]

In his Motion for Home Incarceration, Defendant argues that, if the Court grants his Motion for Compassionate Release and reduces his sentence to time served, it should also modify his five-year period of supervise released and impose home incarceration as a condition of his release. [DN 162]. For support, he cites to *United States v. Spencer*, No. 20-3721, 2020 WL 5498932 (6th Cir. Sept. 2, 2020), in which the Sixth Circuit explained that, "*if the district court reduces a defendant's sentence under § 3582(c)(1)(A) to time served*, it can impose a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home." *Id.* at *2 (citing 18 U.S.C. § 3853(d); USSG § 5F1.2) (emphasis added). The Court therefore understands that Defendant's Motion for Home Incarceration is dependent upon the Court granting his Motion for Compassionate Release. Because the Court is denying Defendant's Motion for Compassionate Release, it will also deny his Motion for Home Incarceration.

14

### III. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendant Rontez P. Colbert's "Emergency Motion for Compassionate Release/Sentence Reduction," [**DN 158**], and "Motion Seeking Modification of His Supervised Release Sentence," [**DN 162**] are **DENIED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 20, 2022

cc: Counsel of Record
    Defendant, pro se

15